# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VENTURE CAPITAL ASSOCIATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN M. NIELSON, Secretary, U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Action No. 17-1912 (JEB) |

## MEMORANDUM OPINION

This case involves the Department of Homeland Security's decision to delay implementing an Obama-era immigration rule, the International Entrepreneur Rule, 82 Fed. Reg. 5,238 (Jan. 17, 2017). The Rule would have allowed certain foreign entrepreneurs to obtain immigration "parole" — that is, to temporarily enter the United States despite lacking a visa or green card. It was finalized in the waning hours of the Obama administration and was set to take effect 180 days later — on July 17, 2017. On the eve of that date, however, the Department issued a new rule ("the Delay Rule") delaying the effective date for another eight months, until March 14, 2018.

Plaintiffs brought suit last September, alleging that the agency had violated the Administrative Procedure Act in promulgating the later rule. This Court agreed and granted summary judgment in their favor, vacating the Delay Rule in the process. Plaintiffs' counsel now move for an award of attorney fees pursuant to the Equal Access to Justice Act (EAJA), which "directs a court to award 'fees and other expenses' to private parties who prevail in

1

[certain types of] litigation against the United States if, among other conditions, the position of the United States was not 'substantially justified.'" Commissioner, INS v. Jean, 496 U.S. 154, 155 (1990) (quoting 28 U.S.C. § 2412(d)(1)(A)). Although there is no dispute that Plaintiffs have prevailed here, both sides contest whether the Government's position was substantially justified. Defendants also decry the amount of fees sought. Finding that Plaintiffs have the better of both arguments, the Court will grant their Motion and award them $102,316.67.

**I.      Background**

The Court previously provided a detailed factual background of the "two competing rules" in this case: (1) the International Entrepreneur Rule (IE Final Rule) and (2) the Delay Rule. See Nat'l Venture Capital Ass'n v. Duke, 291 F. Supp. 3d 5, 9-10 (D.D.C. 2017). For now, it suffices to briefly outline the suit's procedural history.

Plaintiffs include two foreign nationals (Atma and Anand Krishna), two U.S. businesses (Omni Labs and Occasion), and the National Venture Capital Association (NVCA). Two months after the Delay Rule's issuance, they brought this suit seeking to invalidate it, see Compl., ¶ 11, and moved for a preliminary injunction ten days later. See ECF No. 12. The Court heard oral arguments on the Motion on October 20, 2017, and, after discussion with the parties, decided that the case could be resolved expeditiously on summary judgment. See Minute Order of October 25, 2017. Following an expedited round of briefing, the Court granted judgment in Plaintiffs' favor. See NVCA, 291 F. Supp. 3d at 21. Consistent with that decision, it also vacated the Delay Rule.

At all times, Plaintiffs were represented by the law firm of Mayer Brown, LLC, including principally one partner, Paul Hughes, and one associate, John Lewis. See ECF No. 31-6 (Declaration of Paul Hughes), ¶¶ 1-3, 11. They also enlisted two attorneys from the American

Immigration Council — Melissa Crow and Leslie Dellon — for their expertise in immigration laws. Id., ¶ 9. With the litigation largely wrapped up, the parties have filed dueling briefs on attorney fees, which are now ripe for review.

**II.     Legal Standard**

Under the "American Rule," each party ordinarily bears its own attorney fees unless there is express statutory authorization to the contrary. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975). One such statute is the EAJA, which "renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity." Ardestani v. INS, 502 U.S. 129, 137 (1991) (citations omitted).

Pursuant to those provisions, the Court must award attorney fees to a "prevailing party" in an action against the United States "unless [it] finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). To qualify as a prevailing party, a plaintiff must achieve "a resolution of the dispute which changes the legal relationship between" the parties. Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989). An individual is eligible for an EAJA award, furthermore, only if her "net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Likewise, a corporation (such as NVCA) must have a net worth below $7,000,000 and fewer than 500 employees. Id. The motion for an EAJA award, with an accompanying itemized statement of time expended and billing rates, must be filed "within thirty days of final judgment in the action." Id. § 2412(d)(1)(B).

3

**III.    Analysis**

The Government, wisely, does not contest that Plaintiffs were the prevailing parties in this case.  After all, the Court awarded them complete relief, vacating the challenged Delay Rule in the process.  Nor do Defendants dispute that Plaintiffs are financially eligible to receive an EAJA award.  The Court, too, agrees that each Plaintiff has provided sufficient documentation in that respect.  See ECF Nos. 31-1 (Declaration of Bobby Franklin); 31-2 (Declaration of Atma Krishna); 31-3 (Declaration of Anand Krishna); 31-4 (Declaration of Alex Modon); 31-5 (Declaration of Aksh Gupta).

The Government instead maintains that its actions were substantially justified, thereby precluding any award.  Alternatively, it argues that the fees requested by Plaintiffs are unreasonable and asks the Court to reduce any award accordingly.  The Court takes each position in turn.

      A.    Substantial Justification

"Once an applicant's status as a prevailing party is established, the government has the burden of showing that its legal position was substantially justified or that special circumstances make an award unjust." Taucher v. Brown-Hruska, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (citation omimtted).  "The government's position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person' or, in other words, has 'a reasonable basis both in law and fact.'" Id. (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  The agency must show "both" that (1) the "underlying agency action" and (2) "the arguments defending that action in court" satisfy that standard.  See Halverson v. Slater, 206 F.3d 1205, 1208 (D.C. Cir. 2000) (emphasis added).

The Court begins with the "underlying agency action": the Delay Rule. Defendants promulgated that Rule without adhering to the APA's most basic requirements: that they provide "[g]eneral notice of [its] proposed rule making" in the Federal Register, as well as "an opportunity" for the public to comment before promulgating a rule. See 5 U.S.C. § 553(b), (c). While an agency may waive those prerequisites for "good cause," the D.C. Circuit has repeatedly warned that the "the good cause exception" to the APA's notice-and-comment rule "is to be narrowly construed and only reluctantly countenanced." Mack Trucks, Inc. v. EPA, 682 F.3d 87, 93 (D.C. Cir. 2012) (quoting Util. Solid Waste Activities Grp. v. EPA, 236 F.3d 749, 754 (D.C. Cir. 2001)). The APA "excuses notice and comment," it has stressed, only in "emergency situations, or where delay could result in serious harm." Jifry v. FAA, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (citations omitted).

What was the "emergency" justifying the Delay Rule here? In a total of three paragraphs in the Federal Register, DHS offered two rationales for invoking the good-cause exception: (1) expense to the agency; and (2) potential confusion if the IE Final Rule were to take effect. See 82 Fed. Reg. at 31,888. Neither position "substantially justified" jettisoning the APA's notice-and-comment requirements.

First, "the expense of implementing the new parole system." NVCA, 291 F. Supp. 3d at 17. The Court dismissed that concern, and although "the government can lose on the merits and nevertheless be found to have taken a substantially justified position," Taucher, 396 F.3d at 437, this was not a close call. First, Defendants cited no cases (and still have marshaled none) for the proposition that an agency can invoke the good-cause exception simply to protect its own bottom line. See NVCA, 291 F. Supp. 3d at 17. Even assuming it could, the Court of Appeals has reserved only the "possibility that a fiscal calamity could conceivably justify bypassing the

5

notice-and-comment requirement." Sorenson Comm'ns Inc. v. FCC, 755 F.3d 702, 707 (D.C. Cir. 2014) (emphasis added). Far from establishing "fiscal peril," DHS made no "factual findings supporting the reality of the threat." Id. at 706. Indeed, it had previously found that the rule would not "generate additional processing costs to the government to process applications." 82 Fed. Reg. at 5,274. The agency thus lacked a "reasonable basis in law and fact" to skip notice and comment on that basis.

Nor does its justification fare better in hindsight. During litigation, DHS pitched the IE Final Rule as an "extraordinary change," which would require significant resources to implement. See NVCA, 291 F. Supp. 3d at 18. The Court was skeptical of that argument at the time, noting the agency expected it might "receive and process 2,940 applications related to the Rule — hardly a change of 'tectonic' proportions." Id. (quoting 82 Fed. Reg. at 5,273). As it turns out, the agency now says it has received only 13 applications since implementing the IE Rule. See ECF No. 41-1 (Declaration of Daniel Renaud), ¶ 4. Of this baker's dozen, it has processed none to completion. Id., ¶ 8-10. The Court can hardly believe that the agency has expended many (if any) resources to "hir[e] and train[] additional adjudicators" during this process, see NVCA, 291 F. Supp. 3d at 17, making the agency's cost justification all the weaker.

Second, Defendants insisted that implementing the IE Final Rule "would sow confusion and would likely cause the waste of resources by multiple stakeholders with interests in th[e] rulemaking." 82 Fed. Reg. at 31,888. "Most concretely, the agency worrie[d] that if the IE Final Rule were left in place, foreign entrepreneurs might misguidedly rely on it." NVCA, 291 F. Supp. 3d at 19 (citing 82 Fed. Reg. at 31,888). In such case, it feared that applicants could be "caught betwixt and between" if it subsequently rescinded the rule. Id. As the Court explained, however, there was a simple solution to any such problem, and one in line with the APA: "[A]

6

notice of proposed rulemaking would, by definition, alert the public that the agency was considering delaying or rescinding the Rule." Id. Faced with that straightforward alternative to the Delay Rule, the Government was not substantially justified in plowing ahead without notice and comment.

That alone entitles Plaintiffs to fees. Defendants alternatively claim that they were "substantially justified" in raising a standing defense, but even were that so, it would speak only to the Government's "arguments defending th[e] action in court." Halverson, 206 F.3d at 1208. It would have no bearing on whether "the underlying agency action" was itself substantially justified. Id. The EAJA, of course, requires that the agency justify both the action "upon which the civil action is based" "in addition to the position taken by the United States in the civil action." 28 U.S.C. § 2412(d)(2)(D) (emphasis added). If it fails to make either showing, Plaintiffs are entitled to fees. See SecurityPoint Holdings, Inc. v. Transp. Sec. Admin., 836 F.3d 32, 40 (D.C. Cir. 2016). Such is the case here.

B. Fees

The Court's job is not yet done. Having concluded that the Government's position was not substantially justified, it must calculate an appropriate fee award. In doing so, it notes that Plaintiffs "bear the burden of demonstrating the reasonableness of . . . their fee request." Am. Petroleum Inst. v. EPA, 72 F.3d 907, 912 (D.C. Cir. 1996). Here, they have complied with the EAJA directive to submit an "itemized statement . . . [with] the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B); see Hughes Decl., Exhs. A-G. Summing up those entries, they report spending a total of 602.75 hours on this case, including 159.25 hours litigating this fees Motion. See ECF No. 39 (Reply) at 16. They then request a range of amounts topping out at $382,063.75. Id.

7

To determine whether that request is reasonable, the Court must "focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable — *i.e.*, did the attorneys waste or otherwise unnecessarily spend time on the matter." In re Donovan, 877 F.2d 982, 990 (D.C. Cir. 1989) (*per curiam*). Defendants, not surprisingly, attack Plaintiffs at each step.

   *1. Hourly Rate*

Ordinarily, the EAJA allows for reimbursement up to $125 per hour, see 28 U.S.C. § 2412(d)(2)(A), which the Court may then adjust upwards — based on annual, regional consumer-price-index data — to account for cost-of-living increases. See Porter v. Astrue, 999 F. Supp. 2d 35, at 38-39 (D.D.C. 2013) (explaining CPI adjustments to attorney fees). In this case, the Government agrees that a cost-of-living adjustment is appropriate, see Opp. 10 n.7, and the parties peg the EAJA hourly rate at $196.78 in 2017 (including for both attorneys and paralegals). See Reply at 15. In 2018, the rate ticks up slightly to $198.99. Id. Multiplying Plaintiffs' hours worked by these CPI-adjusted statutory rates, Defendants would owe $118,961.09. Id. at 16.

Plaintiffs acknowledge the EAJA rate applies to the "garden variety case," but argue for a departure from that general rule, asking the Court to instead compensate them at their standard billing rate. See ECF No. 31 (Mot. for Attorney Fees) at 14-16. This is no trivial difference. Using their market rate, counsel request $382,063.75 — an amount over 300% larger than the EAJA rate. At minimum, they ask the Court to adopt the LSI-adjusted Laffey matrix, which is "a version of the rate table that judges in this district frequently use to calculate prevailing hourly rates for 'complex federal litigation' services, as adjusted for inflation." Citizens for Responsibility & Ethics in Wash. v. DOJ, 2016 WL 554772, at *1 (D.D.C. Feb. 11, 2016)

8

(citation omitted). Applying that formula, they calculate their total tab as $317,523.25, still a bump of nearly $200,000 over the base amount. See Reply at 16.

The Court declines to depart from the EAJA rate. To do so, it would need to find a "special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). To establish a "limited availability of qualified attorneys," Plaintiffs must show that their counsel possess some "specialized skill" that is "necessary" in the litigation and "can be obtained only at rates in excess" of the cap. See Underwood, 487 U.S. at 572. Here, counsel cite their "specialized expertise" in immigration law, see Mot. at 15, but they have not argued (much less demonstrated) that immigration lawyers can be obtained in the District only at their market rates.

Plaintiffs instead seem to argue that their expertise, even if not in short supply, necessarily merits a departure from the EAJA rate. To be sure, "[i]mmigration law can be complex, and it is a legal specialty of its own." Padilla v. Kentucky, 559 U.S. 356, 369 (2010). "[A] complex statutory and regulatory framework" alone, however, does not qualify as a special factor under the EAJA. See In re Sealed Case 00-5116, 254 F.3d 233, 236 (D.C. Cir. 2001) (finding expertise in federal election law did not warrant departure). To hold otherwise would swallow the rule, as EAJA cases frequently involve "intricate federal statutory schemes." Perales v. Casillas, 950 F.2d 1066, 1078 (5th Cir. 1992) (declining to treat specialty in immigration law as a special factor). The Supreme Court has counseled against allowing exceptions of such "broad and general application." Underwood, 487 U.S. at 573.

In any event, Plaintiffs have not shown that their counsel's immigration expertise was "needful for the litigation in question." Id. This case did not require "knowledge of . . . esoteric nooks and crannies of immigration law." Mot. at 15 (quoting Muhur v. Ashcroft, 382 F.3d 653,

656 (7th Cir. 2004)). Rather, it boiled down to whether the agency had followed the APA's notice-and-comment requirements, a recurring question in administrative law. The Court therefore believes the EAJA provides the appropriate rate. See Truckers United for Safety v. Mead, 329 F.3d 891, 895 (D.C. Cir. 2003) ("[N]othing in EAJA or its legislative history indicates that the Congress intended to entitle 'all lawyers practicing administrative law in technical fields' to a fee enhancement.'") (citation omitted).

      *2. Reasonable Hours*

Now that it has the rate, the Court needs the other multiplier — *i.e.*, the number of hours. The Supreme Court has instructed courts to "exclude from [the] fee calculation hours that were not 'reasonably expended.'" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (quoting S. Rep. No. 94-1011, at 6 (1976)). District courts have "wide discretion to reduce individual fee entries." Baldridge v. Nicholson, 19 Vet. App. 227, 241 (2005); see also Jean, 496 U.S. at 163 ("[A] district court will always retain substantial discretion in fixing the amount of an EAJA award."). Here, the Government asks the Court to reduce Plaintiffs' award "by a fixed rate of fifty percent," arguing that their hours are (1) insufficiently detailed and (2) excessive. See Opp. at 23.

The Court cannot agree on either score. On the first, the Government largely criticizes counsel's entries related to "[p]reparing for oral argument" or "[p]artcipat[ing] in moot court for PI oral argument" as too vague. Id. at 22-23. It is not clear, however, what more Defendants would have Plaintiffs say. For this Court to award fees, "it is not necessary to know . . . the precise activity to which each hour was devoted." Jordan v. DOJ, 691 F.2d 514, 520 (D.C. Cir. 1982) (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1326 (D.C. Cir. 1982)). Rather, "no more is necessary than 'fairly definite information as to the hours

10

devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, (and) associates.'" Id. Preparing for "oral argument" — like conducting "pretrial discovery" or "settlement negotiations" — meets that standard. Id.

Beyond that, the Government challenges entries such as the 0.5 hours counsel spent on "[c]ase management" or the hour on a "litigation team call." See ECF No. 37 (Opp.) at 22-23. The Court "declines . . . to engage in the kind of 'nitpicking' invited by [such] smaller-scale objections." Am. Immigration Cncl. v. DHS, 82 F. Supp. 3d 396, 411 (D.D.C. 2015) (CREW v. DOJ, 826 F. Supp. 2d 226, 229 (D.D.C. 2011)). Instead, its "survey of Plaintiff[s'] billing entries reflects . . . that the vast majority are appropriately detailed." Id. at 412. "No reduction is warranted to account for a handful of entries that could have perhaps benefitted from slightly more detail." Id.

Nor were Plaintiffs' hours so excessive as to merit an across-the-board reduction. While the Court will, as explained below, strike limited entries, it believes a scalpel more appropriate than a hatchet for several reasons. First and foremost, Plaintiffs fully prevailed during the litigation, achieving the entirety of their requested relief. Degree of success is "the most critical factor" in evaluating the reasonableness of a fee award. See Hensley, 461 U.S. at 436. Second, they achieved that result efficiently. Throughout this case, counsel (1) filed a Complaint (which required interviews with five different clients); (2) fully briefed a preliminary-injunction motion; (3) presented oral argument; and (4) fully briefed summary judgment on an expedited basis. They did all this in 450 hours, relying principally on two lawyers and one paralegal. That number clocks in far below analogous cases. See, e.g., Am. Petroleum Inst., 72 F.3d at 916 (allowing 560 hours for briefing a stay petition and oral argument); Loving v. IRS, 2014 WL

11

12778284, at *9 (D.D.C. Sept. 19, 2014) (allowing 1300 hours for litigation challenging IRS rule). Third, Plaintiffs have complied with the Supreme Court's admonition to exercise "'billing judgment' with respect to hours worked." Hensley, 461 U.S. at 437; see also Mot. at 13 (noting voluntary exclusion of over 125 hours).

The Court thus generally finds reasonable the total number of hours for which Plaintiffs seek reimbursement, subject to three exceptions. First, Defendants point out that counsel clocked four hours to "[p]repare for oral argument" after the actual oral-argument date. See Opp. at 22 (citing Hughes Decl., Exh A). Plaintiffs admit that they listed those hours inadvertently and omit them from their final tabulations. See Reply at 11 n.5, 15. The Court, of course, will exclude them as well.

Second, Plaintiffs report spending 9.5 hours on "press strategy" and "coordination with clients regarding media inquiries and outreach." Mot. at 6-7. "In this circuit," however, "the [G]overnment cannot be charged for time [Plaintiffs] spen[d] in discussions with the press." Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 973 (D.C. Cir. 2004); API, 72 F.3d at 913 (holding courts "cannot authorize . . . reimbursement" for "[c]osts associated with media relations"); Harvey v. Mohammed, 951 F. Supp. 2d 47, 65 (D.D.C. 2013) ("In the EAJA context, the D.C. Circuit has stated that discussions with press are not compensable."). Other circuits, too, have disallowed costs for efforts to "sway public opinion." See, e.g., Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 176 (4th Cir. 1994); Halderman by Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995); Greater Los Angeles Council on Deafness v. Cmty. Television of S. Cal., 813 F.2d 217, 221 (9th Cir. 1987). Following their lead, the Court will disallow the 9.5 logged for press-related activities

Third, Defendants challenge Plaintiffs' fees for the instant Motion. The Court generally finds that such "fees on fees" are appropriate, as Plaintiffs prevailed on the "major issue[]" in this case: whether they were "entitled to fees in the first place." AIC, 82 F. Supp. 3d at 414. That said, the 159.25 hours spent on the Motion were excessive. Counsel provide no justification for the time expended, and their hours are out of step with those regularly allowed on such motions. See New Jersey v. EPA, 703 F.3d 110, 116 (D.C. Cir. 2012) (allowing 91 of the requested 227.5 hours spent on a motion for fees); Am. Wrecking Corp. v. Sec'y of Labor, 364 F.3d 321, 331 (D.C. Cir. 2004) (*per curiam*) (calling 118 hours billed for an EAJA petition "an excessive amount" and allowing recovery of 59 hours); see also Loving, 2014 WL 12778284, at *8 (allowing 80 of the requested 190.25 hours for requested fees motion). In keeping with those cases, the Court will allow Plaintiffs to recover 85 hours of attorney time dedicated to this application.

It will thus reduce Plaintiffs' hours and award fees as follows:

| Year | Attorney Hours Requested | Reduction | Attorney Hours Final | Rate | Total |
|---|---|---|---|---|---|
| 2017 | 447.50 | (13.5) | 434 | $196.78 | $85,402.52 |
| 2018 | 159.25 | (74.25) | 85 | $198.99 | $16,914.15 |
| **All** | 606.75 | (87.75) | 519 | | $102,316.67 |

IV.     Conclusion

For the foregoing reasons, the Court finds that Plaintiffs were prevailing parties and that the position taken by the Government was not substantially justified. It also finds that Plaintiffs are entitled to $102,316.67 in attorney fees. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: July 13, 2018